**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LUCAS S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-00408-SH |
| | ) | |
| FRANK BISIGNANO,<br>Commissioner of Social Security, | )<br>) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lucas S. seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 402–434, 1381–1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms Commissioner's decision denying benefits.

## I. Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[1] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[2] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such

---

[1] *See generally* 20 C.F.R. § 416.920 for Title XVI. Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.

[2] *See generally* 20 C.F.R. § 416.960 for Title XVI.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

On April 17, 2023, Plaintiff protectively filed an application for Title II and XVI disability benefits. (R. 17, 211–26.) Plaintiff alleged that he had been unable to work since September 1, 2020, due to attention deficit hyperactivity disorder ("ADHD"), anxiety, and post-traumatic stress disorder ("PTSD"). (R. 213, 220, 728.) Plaintiff was 25 at the time of his alleged disability onset and 29 at the time of the ALJ's decision. (R. 30, 213.) Plaintiff has a high school education and completed two years of technical school but has no past relevant work. (R. 64, 729.)

Plaintiff's claim was denied initially and on reconsideration. (R. 73–108.) Plaintiff requested and received a hearing before an ALJ. (R. 36–72, 135.) The ALJ denied benefits and found Plaintiff not disabled. (R. 17–30.) The Appeals Council denied review on June 6, 2025 (R. 1–6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981.[3] Plaintiff now appeals.

[3] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

## III. The ALJ's Decision

In her decision, the ALJ found that Plaintiff met the insured requirements for Title II purposes through December 31, 2025. (R. 19.) The ALJ then found at step one that Plaintiff had not engaged in any substantial gainful activity since September 1, 2020. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) persistent depressive disorder, (2) generalized anxiety disorder, and (3) PTSD. (R. 20.) The ALJ also found Plaintiff's ADHD to be a medically determinable impairment, but not severe. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. (R. 20–22.)

The ALJ then determined Plaintiff had the RFC to "perform a full range of work at all exertional levels" with numerous non-exertional mental limitations. (R. 22.) The ALJ provided a detailed recitation of the evidence that went into this determination. (R. 22–29.) At step four, the ALJ found Plaintiff had no past relevant work. (R. 29.) Based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as laundry worker, machine packager, and marker. (*Id.*) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 30.)

## IV. Issues

Plaintiff raises two errors on appeal, arguing (1) the ALJ failed to account for all the relevant evidence in determining his RFC; and (2) the ALJ erred in analyzing his subjective complaints/symptoms. (Dkt. No. 14 at 3.)

## V. Analysis

### A. Plaintiff's RFC

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. A claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1).[4] The claimant's RFC is what's left—"the most [the claimant] can still do despite [his] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the record. *Id.* § 404.1520(e). In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).[5] While the ALJ considers medical (and non-medical) evidence, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "Rather, in addition to discussing the evidence supporting his decision,

---

[4] *See generally* 20 C.F.R. § 416.945 for Title XVI.

[5] *See generally* 20 C.F.R. § 416.913 for Title XVI.

the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010.

The ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following limitations:

> able to understand, remember and perform simple tasks, concentrate, persist and maintain pace as needed to perform simple tasks during an 8-hour workday and 40-hour workweek, interact with supervisors as needed to receive work instructions, work in the same area as co-workers but the job should not involve teamwork in order to complete work tasks. The job should not involve interacting with the public. The job should involve no more than ordinary and routine changes to work setting or work duties. The job should not involve travel to unfamiliar places or use of public transportation. He is able to perform tasks that do not involve a production rate pace, such as assembly line work or an hourly production quota[.]

(R. 22.) Plaintiff makes various arguments as to why he believes the ALJ failed to account for all of the evidence in determining the RFC. To the extent the Court understood a cohesive argument was being made in Plaintiff's brief, it is addressed below.

### 1. Rejection of Persuasive Medical Opinions without Explanation

Plaintiff first argues that the ALJ erred because, while the "ALJ found the medical consultants' opinions limitations based on severe ADHD persuasive [she] did not properly explain why she did not accept their limitations despite ongoing diagnoses and treatment affecting Claimant's impulsiveness, attention, and mood dysregulation." (Dkt. No. 14 at 5 (citation modified).) To make this argument, Plaintiff takes a convoluted course. First, he notes that the administrative medical findings that he was "markedly limited" in his ability to "carry out detailed instructions" and "moderated limited" in his ability to "work in coordination with or in close proximity to others without being distracted by them." (*Id.* at 6 (citing R. 78–79, 97–98).) Second, Plaintiff notes that the step-five jobs the ALJ found he could perform based upon the above RFC all include a

reasoning level of 2, which the Dictionary of Occupational Titles ("DOT") describes as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." (*Id.* at 6–7.) *See also* DOT § 361.684-014 (laundry worker I); § 920.685-078 (packager, machine); § 209.587-034 (marker). Third, Plaintiff argues that "[l]limitations to repetitive simple work [are] inconsistent with reasoning level two work . . . ." (Dkt. No. 14 at 6.) From, this, Plaintiff posits that—whatever the RFC says—the ALJ must have implicitly rejected the medical opinions she found persuasive.

Plaintiff's arguments rest on a legal fallacy. The Court has repeatedly rejected the argument made by Plaintiff's counsel that a limitation to simple tasks is inconsistent with reasoning level 2. *See, e.g., Victoria L. N. v. Bisignano*, No. 25-CV-00026-SH, 2026 WL 579941, at *6 (N.D. Okla. Mar. 2, 2026). Moreover, the administrative findings on which Plaintiff relies—the very findings that reflect the "marked" and "moderate" limitations—stated that Plaintiff could "perform simple (repetitive) tasks with routine supervision" (R. 78, 98), something that aligns with the RFC determined by the ALJ and reasoning level 2. There is no basis to find that the ALJ rejected the medical opinions without adequate explanation.

### 2. Weighing Evidence of Concentration

Plaintiff then argues that the ALJ did "not explain how she concluded that [Plaintiff] was *unlimited* in his ability to maintain attention and concentration given his anxiety, paranoia, delusions, and mood symptoms . . . ." (Dkt. No. 14 at 8.[6]) The ALJ

[6] Before making this argument, Plaintiff claims the ALJ failed to consider significantly probative evidence of Plaintiff's symptoms. The Court addresses this argument below.

made no such conclusion. Instead, the RFC limits Plaintiff to jobs requiring him to "concentrate, persist and maintain pace as needed to perform simple tasks during an 8-hour workday . . . ." (R. 22 (emphasis added).) And the ALJ did not ignore the evidence Plaintiff cites. For example, in assessing the prior administrative medical findings, the ALJ specifically cited the evidence "noting symptoms of anxiety, difficulty being in crowds, frequent outbursts, and difficulty handling stress or changes in routine," noting those difficulties "did not wholly compromise [Plaintiff's] ability to function independently, appropriately, and effectively on a sustained basis . . . ." (R. 28.) The ALJ also noted Plaintiff's report of "difficulty with completing tasks, concentration, understanding, following instructions, and getting along with others." (*Id.*) As a result, the ALJ provided more limitations in her RFC than those found at the administrative level. *Cf. Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.")

Plaintiff's complaints are not so much that the ALJ ignored evidence or failed to provide an appropriate explanation for the RFC, but are rather a request for the Court to reweigh the evidence and come to a different conclusion. This is something the Court cannot do. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("we will not reweigh the evidence or substitute our judgment for the Commissioner's" (citation modified)).

**B. Assessment of Subjective Complaints/Symptoms**

Plaintiff next complains that the ALJ erred in analyzing subjective statements, also known as symptoms.

**1. Symptom Analysis, Generally**

A plaintiff's symptoms are part of the nonmedical evidence considered in an RFC assessment. *See* SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017); *see also* SSR 96-8p, at *5 (evidence to be considered in the RFC assessment includes the "effects of symptoms"). "Symptoms" are defined as a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 404.1502(i).[7] When evaluating symptoms, the ALJ uses a two-step process. *See* SSR 16-3p, at *2; *see also* 20 C.F.R. § 404.1529.[8]

First, the medical signs or laboratory findings must show the existence of medical impairments that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* § 404.1529(c).

Factors the ALJ considers in determining the intensity and persistence of symptoms include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3)(i)–(vii). The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

[7] *See generally* 20 C.F.R. § 416.902 for Title XVI.

[8] *See generally* 20 C.F.R. § 416.929 for Title XVI.

findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (citation modified). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence he relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence."[9] *Cowan*, 552 F.3d at 1190 (citation modified).

That is not to say, however, that the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

### 2. The ALJ's Symptom Analysis

The ALJ began by correctly noting Plaintiff's subjective statements from the function report:

> The claimant stated in a function report (completed by his mother) that he had difficulty with completing tasks, concentration, understanding, following instructions, and getting along with others. He could not pay attention and did not finish what he started. He could not follow written instructions because he did not understand, but he could sometimes follow verbal instructions "OK".

(R. 22 (citing R. 787).) The ALJ also noted that the function report reflected Plaintiff could "prepare his own simple meals daily" and "did light housework and mowed." (R. 23

[9] This is particularly true given that courts cannot reweigh evidence or substitute their judgment for that of the Commissioner, *Bowman*, 511 F.3d at 1272, even if they would have reached a different conclusion, *White*, 287 F.3d at 908.

(citing R. 784).) "He could pay bills and handle a savings account." (R. 23 (citing R. 785).) The ALJ next turned to Plaintiff's testimony. "He tried to work after his alleged onset date of September 1, 2020, but he would lose focus completing tasks." (R. 23.) "He has trouble with his memory[,] remembering names, addresses, and phone numbers." (R. 23.) But Plaintiff also testified that he could "follow instructions decently, and then he quits and walks away if he cannot." (R. 23.)

The ALJ next turned to Plaintiff's medical treatment history, noting that Plaintiff received no treatment between December 2020 and June 2023. (R. 24 (citing R. 908, 939).) The ALJ then cited medical records showing Plaintiff's "mood was more stable," "anxiety was more manageable and sleep had been good," and "[c]oncentration was good" (R. 27 (citing R. 1355–56)); mental status exams within normal limits (*id.*); and additional normal exams in July and September of 2024 (*id.* (citing R. 1343–47)).

The ALJ ultimately found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 23.) The ALJ explained her finding based on the factors set forth in 20 C.F.R. § 404.1529(c)(3), particularly the effectiveness of measures taken to alleviate Plaintiff's symptoms and his daily activities. The ALJ looked at the evidence as a whole and reasonably determined the RFC.

Plaintiff even acknowledges that the ALJ considered the medical evidence that Plaintiff claims supports the disabling extent of his symptoms. (Dkt. No. 14 at 14.) But Plaintiff maintains that the ALJ did not "analyze" that evidence—or at least, had she analyzed the evidence correctly, she would have found Plaintiff disabled. But, the ALJ did engage in an extensive analysis of Plaintiff's symptoms, noting that she accommodated those she considered "bona fide" in the RFC and further stating:

> The claimant's allegations and subjective complaints lack consistency with the evidence to the extent that they purport to describe a condition of disability for Social Security purposes. The claimant's mental health treatment during the alleged period of disability has been conservative in nature. He has had one inpatient hospitalization for psychiatric treatment due to intermittent explosive disorder, therefore his contact with others has been limited in the above [RFC] assessment. He made no urgent emergency room visits for emotional crises. Although he has sought specialized mental heath care, he is not consistent in treatment; however, when he is consistent, mental status exams are within normal limits (e.g. Exhibits 9F, 12F). If the claimant's symptoms were so debilitating as to preclude even simple work activities with few changes, he reasonably would have been expected to require more intensive palliative treatment. The claimant testified that he had trouble sleeping; however, he only reported that his sleep was good at his mental health visits (Exhibits 9F/19, 43, 10F/3, 12F/161, 164, 167, 170, 173). While he reported difficulty being around others, he also reported that he worked out 7-8 times per week at the gym and enjoyed training his friends at the gym (Exhibits 2F/8, 4F/9, 9F/22). He also reported that he helped his grandfather who was on hospital and attended LifeChurch weekly (Exhibit 9F/8). Finally, no treating medical source has offered an opinion about the claimant's symptoms and their effects on the claimant's abilities to perform work activities, leaving the claimant's allegations uncorroborated. The claimant is capable of performing work under the above limitations.

(R. 28–29.) The ALJ did all that was required, and the Court will not reweigh the evidence and disturb the ALJ's judgment.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 30th day of September, 2026.



SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT